# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LARRY D. HARRIS JR.,**
    **Plaintiff,**

  v.                                      **Case No. 18-C-0234**

**JEREMY WESTRA, et al.**
    **Defendants.**

## ORDER

Plaintiff Larry D. Harris Jr., a state prisoner who is representing himself, filed a complaint under 42 U.S.C. § 1983. I allowed him to proceed on a Fourteenth Amendment due process claim where he alleges that defendant, Jeremy Westra, denied him due process because he was not impartial at plaintiff's administrative confinement hearing. I have also allowed plaintiff to proceed against defendant Brain Foster in his official capacity because plaintiff seeks injunctive relief. Before me now is defendants' motion for summary judgment. For the reasons set forth below, I grant defendants' motion for summary judgment.

## I.    FACTS OF THE CASE[1]

### A. *Facts of the Case*

It is undisputed that on February 18, 2016, Harris assaulted an officer at Columbia Correctional Institution where he was confined at the time. Docket No. 46 at ¶¶ 5-7. That same day, he was transferred to Waupun Correctional Institution. *Id.* at ¶ 8. On March 10,

---

[1] The facts are primarily taken from Defendant's Amended Proposed Findings of Fact (Docket No. 43) and Plaintiff's Response to Defendant's Amended Proposed Findings of Fact (Docket No. 46).

2016, plaintiff was issued Conduct Report 2646884 for the assault of the officer at Columbia. Docket No. 43 at ¶ 9.

On April 1, 2016, a hearing was held on this conduct report, and defendant Captain Jeremy Westra was the hearing officer. *Id.* at ¶ 10. Conducting hearings is a regular part of Westra's job. *Id.* at ¶ 12. Prior to the hearing, plaintiff requested the video of the assault be used as evidence, and it subsequently was viewed at the hearing. *Id.* at ¶¶ 13-15. It is undisputed that the video shows plaintiff assaulting the officer and is consistent with the conduct report. Docket No. 46 at ¶ 16. Also, Westra considered 19 photos consisting of the officer's injuries and of the scene. Docket No. 43 at ¶ 18. Other than stating he was not guilty, plaintiff did not present any defense. *Id.* at ¶ 14.

Westra found plaintiff guilty of an assault of an employee under Wis. Admin. Code § DOC 303.13(1). *Id.* at ¶ 19. The day before the hearing, Westra also issued a disposition of 360 days disciplinary separation. *Id.* at ¶ 20. Plaintiff does not dispute that Westra's decision to issue the disposition was based on the fact that plaintiff had another conduct report in the last 12 months "for disruptive conduct, disobeying orders, and endangering safety." Docket No. 46 at ¶ 21. Westra noted that plaintiff "failed to take responsibility for his actions and showed no remorse." *Id.* He also considered disciplinary separation as a deterrent and as a means to protect other staff and inmates from injury. *Id.*

A year later, presumably as the 360-day disciplinary separation was about to expire, Captain Tritt, the captain in charge of the Restrictive Housing Unit, recommended plaintiff for placement in administrative confinement based on plaintiff's underlying conviction and conduct record. Docket No. 43 at ¶¶ 22-24. In particular, Tritt noted that plaintiff was serving a life sentence for first degree murder with a dangerous weapon, and

2

that in his time in the Wisconsin corrections system, plaintiff had accumulated 46 minor conduct reports and 21 major conduct reports. *Id.* at ¶¶ 24-26. In addition to Conduct Report 2646884, mentioned above, Tritt also highlighted four additional conduct reports: two concerned physical fights with inmates and two concerned disobeying orders and disrespect towards prison staff. *Id.* at ¶ 27. Tritt explained that these conduct reports demonstrated "an assault nexus between the current offense convictions and several of the conduct reports received, despite a previous completion of [Cognitive Intervention] programming." *Id.* at ¶ 28.

On April 12, 2017, Tritt's recommendation went before a three-member Administrative Confinement Review Committee (ACRC). *Id.* at ¶¶ 29-30. The purpose of the ACRC is to look at an inmate's behavior as a whole and determine whether the inmate is a threat to institutional security. *Id.* at ¶ 43. Westra was part of the ACRC. *Id.* at ¶ 30. ACRC asked plaintiff to give a statement, but he declined. Docket No. 46 at ¶ 31. ACRC unanimously held that the plaintiff should be placed in Administrative Confinement. Docket No. 43 at ¶ 32. In its decision, ACRC noted that it relied on four conduct reports that Tritt highlighted but did not list Conduct Report 2646884. *Id.* at ¶¶ 33-34. Defendants state that there is no policy prohibiting a hearing officer from serving on the ACRC and that omitting the conduct report was an oversight *Id.* at ¶¶ 34, 42. Defendants assert the ACRC did consider it, but failed to mention it in its report. *Id.* at ¶ 34 Plaintiff disputes this, stating that prior to the hearing, he spoke to his staff representative expressing concerns that Westra had been the hearing officer for Conduct Report 2646884. Docket No. 46 at ¶ 34. According to plaintiff, the staff representative told him that the conduct report would not be considered in ACRC's decision. *Id.*

Plaintiff appealed ACRC's decision to Warden Brian Foster. Docket No. 46 at ¶ 36. He asserts that in his appeal he noted Westra's apparent conflict. *Id.* Foster affirmed the original action basing his decision on plaintiff's "violent acts and him showing no remorse for his actions." Docket No. 43 at ¶ 36. Plaintiff states that Foster did not address his concerns about Westra's impartiality. Docket No. 46 at ¶ 36. Plaintiff then appealed Foster's decision to the Division of Adult Institutions Administrator, who also affirmed the decision, finding that plaintiff's "presence in the general population poses a substantial risk to another and institutional security." Docket No. 43 at ¶ 37.

Approximately six months later, plaintiff's placement was up for review, and another ACRC hearing was held on October 4, 2017. *Id.* at ¶¶ 46-47. Again, Westra was part of the three-member panel. *Id.* at ¶ 47. ACRC decided to extend plaintiff's placement in Administrative Confinement based on his conduct report history, demonstrated lack of respect for authority, and the fact that he had not attended any programming or taken other steps to move back towards the general population. *Id.* at ¶ 48. Plaintiff still remains in Administrative Confinement. *Id.* at ¶ 51.

## II.     Analysis

### A.  Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding a motion for summary judgment, I resolve all factual disputes and make all reasonable factual

4

inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

*B. Fourteenth Amendment Due Process Claim Against Westra.*

Plaintiff claims that Westra violated his Fourteenth Amendment Due Process rights by participating both in the initial ACRC hearing and the review six months later. To demonstrate a Fourteenth Amendment Due Process violation, a plaintiff must show "(1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). An inmate has a limited liberty interest in avoiding segregation. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). "Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An indefinite stay in segregation could implicate a prisoner's liberty interest because it could cause an atypical and significant hardship, especially where the periodic review of the inmate's confinement fails to meaningfully consider the inmate's circumstances. *Rodriguez v. Haines*, No. 14-CV-86, 2015 WL 9296308 at *5 (W.D. Wis. Dec. 18, 2015) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009)).

Defendants are willing to assume for the sake of argument that plaintiff has a protected liberty interest at stake here. Docket No. 42 at 9. Also considering that the crux of plaintiff's claim is that he was deprived of meaningful review of his confinement status,

I will assume for the purposes of summary judgment that plaintiff satisfies the first part of the standard.

For the second part, where prison disciplinary proceedings are in question, "due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline." *Piggie v. Cotton*, 342 F.3d 660, 662 (7th Cir. 2003). Plaintiff claims that he was deprived of the opportunity to present evidence to an impartial decision-maker because prior to serving on his ACRC panel, Westra was the hearing officer relating to Conduct Report 2646884. Where a prison officer "is substantially involved in the investigation of the charges against an inmate, due process forbids that officer from serving on [a disciplinary] committee" because of bias. *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) (per curiam). However, where the officer's involvement in the investigation is tangential, he is not disqualified from serving on a disciplinary committee. *Id.* "Adjudicators are entitled to a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high." *Piggie*, 342 F.3d at 666.

Westra's involvement is, at best, tangential and does not rise to the level of bias. He was an adjudicator, determining whether plaintiff was guilty of the offense in the conduct report and then serving on the ACRC a year later. It is understood that plaintiff takes no issue with Westra's original role as a hearing officer. Instead he argues that Westra's role, specifically finding plaintiff guilty of the offense in Conduct Report 2646884, biased him against plaintiff so that he could not make an impartial ruling in the ACRC.

In *Piggie v. Cotton*, the plaintiff attempted a similar argument as plaintiff here—that the members of the Conduct Adjustment Board (CAB) could not be impartial because they presided over his previous disciplinary hearings. *Id.* The court held that due process is violated where officials "are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof," but the defendant officers, even if they witnessed underlying events, were not precluded from serving on the CAB. *Id.* at 667. Essentially, there needs to be something more because "a rule automatically disqualifying any CAB member from adjudicating a prisoner's habitual case because he or she was a witness to events underlying one of the prisoner's prior convictions would be infeasible." *Id.*

Westra's involvement in the underlying events is substantially less than the *Piggie* officers who witnessed the underlying events, and so no reasonable jury could conclude that his participation on the ACRC was impermissible. At most, his involvement was adjudicating a conduct report that concerned an offense that happened at an entirely different institution.

He also fairly adjudicated Conduct Report 2646884. After reviewing a substantial amount of evidence, including a video and 19 photos, he found plaintiff guilty and gave him a year in administrative confinement. Notably, plaintiff does not dispute that the video showed him committing the assault that was the subject of the conduct report nor does he dispute Westra's conclusion.

Westra's lack of involvement combined with the undisputed purpose of the ACRC demonstrates that there is no evidence in the record that Westra was biased in either of the ACRC reviews. The ACRC was not reviewing Westra's decision for Conduct Report 2646884; at both hearings it was reviewing whether the plaintiff's conduct, as a whole, threatened institutional safety. While Westra may have had more intimate knowledge of plaintiff's circumstances, character, and habits than the other two ACRC members because he had served as the hearing officer for Conduct Report 2646884, that conduct report was just one tiny piece that the ACRC considered. Indeed, the record indicates that, at best, Conduct Report 2646884 played such a minor role, it was omitted from the ACRC's written report of the first hearing. It is disputed whether the omission from the report was erroneous or intentional, but that dispute is irrelevant. Even if, as plaintiff alleges, the report was intentionally omitted and not considered at all, those circumstances actually serve to eliminate whatever potential bias Westra may have.

Also, it is undisputed that the ACRC reviewed four additional conduct reports in which Westra had no involvement; that Westra had no involvement in initiating the ACRC process (that was Captain Tritt); and that the ACRC relied on factors other than Conduct Report 2646884 in making its decision. Those factors include plaintiff's disciplinary record for his entire time in the Wisconsin Department of Corrections and the nature of his underlying conviction. No reasonable jury could conclude that Westra's involvement with Conduct Report 2646884 created a bias that infringed on plaintiff's Fourteenth Amendment rights in both ACRC hearings. Thus, I will grant summary judgement on this claim in favor of the defendants.

### C. *Qualified Immunity*

The defendants also argue that Westra is entitled to qualified immunity. Because I have granted summary judgment in Westra's favor on the merits, I do not need to address the qualified immunity argument.

### D. *Official Capacity Claim Against Foster*

I allowed plaintiff to proceed against defendant Warden Brian Foster in an official capacity because the plaintiff wanted injunctive relief including new hearings regarding his administrative confinement that do not violate his due process rights. Because I have granted summary judgment in Westra's favor on the merits, there are no claims remaining for which injunctive relief could be granted. As such, I dismiss the official capacity claim against defendant Foster.

For the reasons stated, **IT IS ORDERED** that defendant's motion for summary judgment (Docket No. 32) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 26th day of March, 2020.

s/Lynn Adelman_____<br>
LYNN ADELMAN<br>
United States District Judge